UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUILLIE L. HARVEY,<br><br>          Plaintiff,<br><br>v.<br><br>A. AYALA, et al.,<br><br>          Defendants.<br>_____/ | 1:10-cv-02343-MJS (PC)<br><br>ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON COGNIZABLE EIGHTH AMENDMENT EXCESSIVE FORCE CLAIM<br><br>(Doc. 1)<br><br>THIRTY-DAY DEADLINE |

      Plaintiff Quillie L. Harvey ("Plaintiff") is a state prisoner proceeding pro se in a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has consented to the Magistrate Judge handling all matters in this action. (ECF No. 4.)

      Plaintiff initiated this action on December 16, 2010. (Compl., ECF No. 1.) Plaintiff's Complaint is currently before the Court for screening. The Court finds Plaintiff's Complaint states a cognizable claim for excessive force under the Eighth Amendment, but fails to state any other cognizable claim.

**I.**    **SCREENING REQUIREMENT**

      The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C.

-1-

§ 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949-50.

## II.   SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff is a state prisoner currently incarcerated at Pelican Bay State Prison. The incidents alleged in his Complaint however occurred at Wasco State Prison ("Wasco").

Plaintiff brings this action for excessive force under the Eighth Amendment and for due process violations under the Fourteenth Amendment. Plaintiff also alleges violations of state law and the California Constitution.[1] Plaintiff names the following individuals as defendants: 1) A. Ayala, a correctional officer at Wasco, 2) D. Martinez, a correctional officer at Wasco, 3) C. Villanueva, a lieutenant at Wasco, 4) L. Gresham, a lieutenant at

---

[1] Plaintiff does not describe what state laws and sections of the California Constitution have been violated.

1  Wasco, 5) B. Covey, a captain, and 6) S. Swenson, a control booth or tower officer.
2  Defendants are sued in their individual and official capacities.
3      Specifically, Plaintiff alleges as follows:
4      On August 30, 2010, Plaintiff was being transferred from Salinas Valley State Prison
5  to Centinella State Prison. (Compl. at 5.) The transport vehicle stopped at Wasco for the
6  night and Plaintiff was assigned to a cell with cell-mate who was an "other." (Id. at 5-6.)
7  An "other" is an individual of a race other than white, African-American, or Hispanic. (Id.)
8  The assigned cell-mate would not let him into the cell, and he informed Plaintiff that the
9  prison was not housing African-American prisoners with "others." (Id.)
10     Plaintiff informed Defendant Ayala of the situation and advised that Plaintiff could
11 not be housed with an "other" because he was in prison for killing an "other."(Compl. at 6.)
12 Defendant Ayala told Plaintiff that if he did not go voluntarily to the assigned cell,
13 Defendant Ayala would beat and pepper spray him. (Id.) Plaintiff went outside of the
14 office, and Defendant Ayala approached him with a can of pepper spray. (Id.) Plaintiff said
15 he would talk to his assigned cell-mate. Plaintiff returned to his assigned cell with
16 Defendant Ayala. (Id.) At the assigned cell, Defendant Ayala placed the pepper spray
17 against Plaintiff's face, and lunged at Plaintiff. (Id.) Plaintiff ran to Defendant Martinez, the
18 other correctional officer on duty. (Id.) As he was running, Defendant Ayala sprayed
19 Plaintiff's back with pepper spray. (Id.) Plaintiff then laid down in the prone position. (Id.)
20 At that point, Defendant Martinez approached Plaintiff. (Id.) Defendants Ayala and
21 Martinez spoke to each other, and Defendant Martinez sprayed the whole canister of
22 pepper spray in Plaintiff's face. (Id.) Defendant Ayala also hit Plaintiff in the back. (Id.)
23 Plaintiff was dragged out of the building, placed in handcuffs, and taken to a cage in front
24 of the program office. (Id.) Plaintiff could barely breathe and he vomited. (Id.)
25     Plaintiff immediately made videotaped allegations to Defendant Villanueva about
26 this excessive force, and said that Defendants Ayala and Martinez were falsely claiming
27 Plaintiff had assaulted Defendant Ayala. (Compl. at 7.) Defendant Villanueva said that a
28 bruise on Plaintiff was an old one and was not a result of any abuse from the altercation

1  with Ayala. (Id.) Plaintiff advised that everyone in D-Facility witnessed the incident,
2  although Plaintiff did not know their names and numbers. (Id.) Defendant Villanueva did
3  not interview any witness. (Id.) Plaintiff also wrote a written statement that night, and
4  offered in it to take a polygraph test. (Id.)

5        After the interview, Plaintiff was taken to Administrative Segregation. (Compl. at 7.)
6  His body was burning, and he could not open his eyes. (Id.) He vomited many times. (Id.)

7        At Plaintiff's 114 hearing, Plaintiff told Defendant Gresham that he was still suffering
8  from the after effects of the pepper spray. (Compl. at 7.) Defendant Gresham said he had
9  read Plaintiff's written statement, that Plaintiff's allegations would be investigated, and that
10 Plaintiff would remain in Administrative Segregation while the investigation went on. (Id.)
11 Neither Defendant Gresham nor anyone else ever investigated Plaintiff's allegations. (Id.)

12       Plaintiff continued to suffer after-effects of the pepper spray. (Compl. at 7.) Plaintiff
13 could not eat or drink for the next several days. (Id.) Plaintiff's vision stayed blurry, and
14 he eventually had to be prescribed contact lenses. (Id. at 8.) Plaintiff's vision remains
15 poor. (Id.) Plaintiff also has been diagnosed with a hernia caused by the vomiting he
16 suffered from being pepper sprayed. (Id.)

17       On September 6, 2010, Plaintiff wrote a staff complaint, detailing his allegations.
18 (Compl. at 8.) On September 22, 2010, Plaintiff wrote a Complaint against Defendants
19 Villanueva, Gresham, and Covey for their failure to investigate Plaintiff's allegations. (Id.)
20 Hearing nothing regarding his grievances, he sent them to the appeals coordinator. (Id.
21 at 8-9.)

22       On September 9, 2010, Plaintiff received a false Rules Violation Report ("RVR").
23 (Compl. at 8.) Defendant Ayala had falsely written that Plaintiff had hit him in the shoulder
24 area and caused a large bruise. (Id.) Defendant Martinez had falsely written that he
25 pepper sprayed Plaintiff only after Plaintiff ran up to him. (Id.) Defendant Swanson also
26 falsely reported he had seen Plaintiff strike Defendant Ayala. (Id.)

27       Plaintiff was eventually assigned an investigative employee. (Compl. at 9.) The
28 investigative employee told Plaintiff that no inmates had been interviewed and that there

1  had been no investigation of the alleged staff misconduct. (Id.) The investigative
2  employee said he would not interview the staff inmates because he did not know their
3  information, but would interview the cell-mate Plaintiff had been assigned to. However, it
4  turned out that the cell-mate had been moved. (Id.) The investigative employee advised
5  Plaintiff that there was no picture of Defendant Ayala's injury. (Id.)

6  Plaintiff had a hearing on the battery charge before Lieutenant Bustos. (Compl. at
7  10.) Plaintiff went to the hearing with a written statement, and asked that it be recorded
8  in the final disposition. (Id.) In this statement, Plaintiff said that the investigative employee
9  had not done his job and that Plaintiff's allegations had never been investigated. (Id.)
10 Plaintiff was found guilty. (Id.) The final disposition did not include Plaintiff's written
11 statement. (Id.)

12 On October 28, 2011, Plaintiff went before a committee consisting of Chief Deputy
13 Warden Katavich, Captain Sutton, Associate Warden Nipper, Correctional Counselor
14 Weaver, and Correctional Counselor Keyfauver. (Compl. at 10-11.) These individuals
15 were assessing whether Plaintiff should be given an eleven month Secure Housing Unit
16 ("SHU") term for the battery charge, and whether his transfer to Centinella State Prison
17 should be rescinded. (Id. at 11.) Plaintiff was to be transferred to the SHU at California
18 State Prison, Corcoran. (Id.) Plaintiff asked to give an account of what happened, but no
19 one would listen. (Id.) Plaintiff again provided a written statement, but was told that the
20 committee would not take it. (Id.) The statement was placed in his C-File, but not his 128.
21 (Id.)

22 Plaintiff alleges that Defendants Ayala and Martinez used excessive force against
23 him. Plaintiff alleges that Defendants Ayala, Martinez, and Swenson filed false reports
24 against him. Plaintiff alleges that Defendants Villanueva and Gresham tried to hinder
25 investigations into the incident.

26 Plaintiff asks for compensatory damages in the amount fo $50,000 against each
27 Defendant. He asks for punitive damages against Defendants Gresham, Covey, Swenson,
28 and Villanueva in the amount of $100,000. Plaintiff asks for punitive damages against

Defendants Ayala and Martinez in the amount of $200,000. Plaintiff also asks for a jury trial and any additional relief that the Court deems is just.

## III.   ANALYSIS

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

### A.   Excessive Force

Plaintiff claims that Defendants Ayala and Martinez used excessive force against Plaintiff in violation of the latter's constitutional right to be free of such force.

The analysis of an excessive force claim brought pursuant to Section 1983 begins with "identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989). The Eighth Amendment's prohibition on cruel and unusual punishment applies to incarcerated individuals, such as Plaintiff here. Whitley v. Albers, 475 U.S. 312, 318 (1976). To state an Eighth Amendment claim, a plaintiff must allege that the use of force was "unnecessary and wanton infliction of pain." Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir.2001). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Hudson v. McMillian, 503 U.S. 1, 9 (1992); see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries). However, not "every malevolent touch by a prison guard gives rise to a federal

cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

Whether force used by prison officials was excessive is determined by inquiring if the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7. The Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. See Whitley, 475 U.S. at 321. The absence of significant injury alone is not dispositive of a claim of excessive force. See Wilkens v. Gaddy, ___ U.S. ___, ___ - ___, 130 S. Ct. 1175, 1176-77 (2010). "Neither accident nor negligence constitutes cruel and unusual punishment, as '[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.' " Williams v. Ramirez, 2009 WL 1327515, *3 (E.D.Cal. May 12, 2009) (quoting Whitley, 475 U.S. at 319).

Based on the facts alleged, which the Court must at this stage of the proceeding take as true, Plaintiff has properly stated a claim for excessive force against Defendants Martinez and Ayala. Plaintiff alleges that Defendant Ayala used pepper spray on Plaintiff and struck him even though Plaintiff's suggests he had submitted to Defendant Ayala's authority and was lying prone on the floor. Plaintiff alleges further that Defendant Martinez then used an entire can of pepper spray on Plaintiff while he was in the prone position. As plead, Plaintiff's Complaint alleges that these Defendants' use of this force was unnecessary and thus malicious and sadistic and designed solely to cause harm. This unnecessary use of force caused multiple injuries to Plaintiff, including a hernia and permanent vision loss.

Plaintiff has stated a claim against Defendants Ayala and Martinez for excessive force under the Eighth Amendment.

**B.     Due Process**

In his Complaint, Plaintiff alleges that Defendants Ayala, Martinez, and Swenson filed false reports against him, and that Defendants Villanueva, Gresham, and Covey tried to hinder Plaintiff's investigations. Plaintiff alleges that these Defendants have violated his rights under the Due Process Clause of the Fourteenth Amendment.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483–84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563–71.

Plaintiff has not alleged any of the elements of a cognizable due process claim. He

has not satisfied his initial burden of establishing a liberty interest existing and being violated. Being the subject of a battery charge and false reports and being assessed a potential SHU term does not allege a liberty interest violation. Plaintiff does not clearly describe the procedural protections afforded him. He does not say whether he was given notice of the charges, a written statement of the evidence relied upon by the fact finders, or 24 hours notice of the hearing, whether he was given an opportunity to present evidence, or whether he required legal assistance.

Plaintiff has not stated a cognizable claim under the Due Process Clause against Defendants Ayala, Martinez, Swenson, Villanueva, Gresham, or Covey. Plaintiff will be given leave to amend this claim. If he chooses to amend, he must address the above-described deficiencies and describe in detail the notices, procedures, and rights afforded to him. He may, however, be better served by focusing his energies and time on pursuing the excessive force claim which has been found to be cognizable.

### C. Damages

Additionally, Plaintiff cannot recover the relief he seeks against Defendants named in their official capacities. The Supreme Court has held that a suit against a state-employed individual in his official capacity is "no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). A claim for monetary damages against Defendants employed by the State of California in their official capacity is barred by the Eleventh Amendment. See Blaylock v. Schwinden, 862 F.2d 1352, 1353-54 (9th Cir. 1988). Thus, Plaintiff cannot seek recovery of monetary damages from Defendants named in their official capacities. If Plaintiff amends his complaint, he should only name Defendants in their individual capacities or omit his claim for monetary damages.

### IV. Conclusion and Order

Plaintiff's complaint states a cognizable claim for relief against Defendants Ayala and Martinez under the Eighth Amendment, but no other claim. The Court will provide

Plaintiff with the opportunity to file an amended complaint curing deficiencies which Plaintiff believes, in good faith, are curable. Lopez, 203 F.3d at 1130; Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and he is agreeable to proceeding against Defendants Ayala and Martinez on his Eighth Amendment excessive force claim, he may file a notice informing the Court that he does not intend to amend and he is willing to proceed only on his cognizable claim. Plaintiff's other claims will then be dismissed, and the Court will provide Plaintiff with the requisite forms to complete and return so that service of process may be initiated on Defendants Ayala and Howard.

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at __, 129 S. Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the prior complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220. Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

        a.     File an amended complaint curing the deficiencies identified by the Court in this order, or

        b.     Notify the Court in writing that he does not wish to file an amended complaint and he is willing to proceed only against Defendants Ayala and Martinez on his Eighth Amendment excessive force claim; and

3.     If Plaintiff fails to comply with this order, this action will be dismissed, without prejudice, for failure to obey a court order.

IT IS SO ORDERED.

Dated:   December 21, 2011      /s/ *Michael J. Seng*
                                              UNITED STATES MAGISTRATE JUDGE